## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT J. BARTON, et al.,     )
                             )
         Plaintiffs,     )
                             )
vs.                    )     NO.  CIV-06-0179-HE
                             )
CITY OF MIDWEST CITY, et al.,     )
                             )
         Defendants.     )

## ORDER

This case is before the court on the motion to dismiss filed by defendants City of Midwest City ("City") and Midwest City Memorial Hospital Authority ("Hospital Authority").  [Doc.#20].  Plaintiffs have responded in opposition to the motion and defendants have filed a reply.  Upon consideration, the court concludes this case should be dismissed without prejudice for lack of subject matter jurisdiction.

### Background[1]

Plaintiffs are business owners and apartment/duplex dwellers who leased retail and residential space on property owned by plaintiffs Robert "Bob" Barton, the Robert J. "Bob" Barton Trust and House of Realty, Inc. in Midwest City, Oklahoma.  In the late 1990s, defendants City and Hospital Authority[2] formed a joint plan to redevelop approximately 80

---

[1]*The following recitation is taken from the facts submitted by the parties and from the Oklahoma Supreme Court's opinions in* City of Midwest City v. House of Realty, Inc., et al., *100 P.3d 678 (Okla. 2004), and* House of Realty, Inc., et al. v. City of Midwest City, et al. *109 P.3d 314 (Okla. 2004).  In addition, the court has taken judicial notice of the state court proceedings referenced by the parties.*

[2]*The Hospital Authority is a public trust.*

acres of land in Midwest City, including the property owned and occupied by the plaintiffs.[3]
Id. City made an offer to purchase plaintiffs' property. However, the offer, which did not
include payment for relocation expenses or business losses, was declined. Id. City then
brought two condemnation actions in state court seeking title to plaintiffs' property.
Throughout the proceedings, City argued it was either exercising its alleged general power
to condemn lands under the Oklahoma Constitution or acting pursuant to Oklahoma's Local
Development Act in conjunction with a resolution by the City Council that plaintiffs'
property was blighted. Id. at 681-83. Plaintiffs challenged both the City's power to condemn
the property and its proposed valuation of the property. The trial court rejected plaintiffs'
arguments and, in October of 2003, found in favor of the City.

In February of 2004, while the cases were on appeal to the Oklahoma Supreme Court,
the City served eviction notices on plaintiffs. According to the plaintiffs, their motion for
stay of eviction pending appeal was denied by the Oklahoma Supreme Court. On April 30,
2004, the City, pursuant to the order of the trial court, demolished the businesses and
residential structures on the property. The City did not demolish a Firestone store which was
apparently located in the development area but not on land owned or occupied by plaintiffs.

On June 29, 2004, the Oklahoma Supreme Court, in a published decision, reversed

---

[3]*In order to facilitate their redevelopment plan, the Hospital Authority agreed to advance up to thirty million dollars for the City to acquire property in the project area. Once the City had acquired title to a portion of property in the project area, either through purchase or condemnation, it transferred title to the Hospital Authority which had entered into a contract with a private developer to lease the area primarily to retail establishments. City of Midwest City, 100 P.3d at 680.*

the decision of the trial court.  It held that the City did not possess a general power of eminent domain in conjunction with the Local Development Act.  City of Midwest City, 100 P.3d at 690.  The court implied in its decision that the City was not necessarily prohibited from condemning the property in conjunction with the Hospital Authority so long as it followed the statutes specifically addressing joint efforts between a municipality and a public trust.  Those statutes are more restrictive and provide greater protection to land owners.[4]  Id. at 686-689.

Following the Oklahoma Supreme Court's decision, the City took a different tack in its effort to condemn the plaintiffs' property.  On September 14, 2004, the City passed a resolution finding plaintiffs' property blighted, created the Midwest City Urban Renewal Authority and authorized it to acquire the property through eminent domain for purposes of implementing the Urban Renewal Plan.

In November of 2004, pursuant to the newly enacted Urban Renewal Plan, the City and the Urban Renewal Authority again filed an eminent domain proceeding against Barton, the Barton Trust, the House of Realty and several previous commercial and residential tenants, seeking to condemn the property owned and previously occupied by plaintiffs.  In

---

[4]*In a related opinion issued on December 21, 2004, the Supreme Court found a request to enjoin the condemnation proceedings instituted by the City moot based on its June 29, 2004, decision and the City's position that it had abandoned its efforts to take the property by eminent domain.  House of Realty, Inc., 109 P.3d at 317-18.  It also concluded, however, that the Hospital Authority was prohibited from investing thirty million dollars in the redevelopment project without a vote of the people and that state statutes generally prohibited public trusts from buying land for the purpose of operating retail outlets.  Id. at 321-322, 325-326.  The court remanded to the trial court the issue of whether the Hospital Authority was exempt from this general statutory prohibition.  Id. at 322.*

response to that suit, Barton, the Barton Trust, the House of Realty and the tenants sought leave to add the Hospital Authority as a party to the action and to file federal and state tort claims against the Hospital Authority and the City for their earlier demolition of plaintiffs' property.  Pl's. Ex. 3.  They also sought leave to allow the intervention of two other tenants as parties to the counterclaims.  Id.  Their motion was denied by the trial court.  Pl's. Ex. 5.

On August 1, 2005, the trial court issued an order stating that plaintiffs' property would be valued as of the present time.  Pl's. Ex. 6.  It further stated that any injury or damages which had been incurred as a result of the 2004 demolition of the structures on the property would not be taken into account for purposes of determining compensation.  Id.

Several unresolved issues related to the taking of plaintiffs' property remain in state court.  Those issues include the validity of the Urban Renewal Plan based on its association with the Hospital Authority (see, supra, n.4), the validity of the attempted taking of plaintiffs' property by the Urban Renewal Authority and the City and the compensation due.  A trial on the remaining issues is scheduled for November of 2006.

On February 22, 2006, plaintiffs filed this case pursuant to 42 U.S.C. § 1983, alleging that the City and the Hospital Authority violated their Fourth and Fourteenth Amendment rights when they demolished the commercial and residential structures on the property.  In particular, plaintiffs allege that the defendants' decision to pursue eviction and demolition while the condemnation case was on appeal was arbitrary and capricious and constituted an unlawful seizure of their property. They also allege that the defendants' pursuit of their property, but not that of other businesses located in the project area, constituted a violation

4

of their equal protection rights.  Defendants have moved for dismissal of the plaintiffs'
complaint arguing the claims raised are not ripe for review due to the ongoing state court
proceedings.

Discussion

A ripeness challenge "bears on this court's subject matter jurisdiction under Article
III of the Constitution."  Bateman v. City of West Bountiful, 89 F.3d 704, 706 (10th Cir.
1996).  As a result, plaintiffs have the burden of producing evidence to establish that their
claims are ripe for review.  Signature Props. Int'l Ltd. P'ship v. City of Edmond, 310 F.3d
1258, 1265 (10th Cir. 2002).

Defendants argue that the plaintiffs claims fall under the Fifth Amendment Takings
Clause and that plaintiffs must exhaust their state court remedies before proceeding in this
court.  Plaintiffs respond that they are not asserting a Fifth Amendment takings claim and
that their substantive due process, equal protection and seizure claims are not subsumed
within a takings claim.  They also assert that the ongoing state condemnation proceeding
does not provide them with an adequate remedy for the demolition of their property and that
an inverse condemnation action is not available because they would have to admit to the
validity of the taking.

In general, a takings claim must be exhausted in state court before it may be brought
in federal court.  See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank
of Johnson City, 473 U.S. 172, 195 (1985) (a takings claim is not ripe until the plaintiff has
pursued all available remedies under state law and been denied just compensation); Bateman,

5

89 F.3d at 708 ("Because the Fifth Amendment does not require compensation to be paid before a deprivation occurs . . . a taking is not complete until the State fails to provide just compensation for the property.") (internal quotations and citation omitted).  If additional constitutional claims closely related to the takings claim are asserted, those claims must also be deferred pending state action.  <u>Bateman</u>, 89 F.3d at 709 (noting that the ripeness requirement also applies to due process and equal protection claims which rest on the same facts as those underlying a takings claim).[5]  <u>See</u> <u>Rocky Mountain Materials & Asphalt, Inc.</u> <u>v. Bd. of County Comm'rs of El Paso County</u>, 972 F.2d 309, 311 (10th Cir. 1992) (finding that "[w]hen a plaintiff alleges he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based," he must "utilize the remedies applicable to the takings claim" in order to satisfy the ripeness requirement).

In this case, the court concludes plaintiffs' Fourth and Fourteenth Amendment claims are so closely related to the takings claim that they should be deferred pending completion of state proceedings.  <u>See</u> <u>Bateman</u>, 89 F.3d at 709 (plaintiff not permitted to "circumvent the ripeness requirements simply by alleging a more generalized due process or equal

---

[5]*The Tenth Circuit has noted a limited distinction for certain procedural due process claims. <u>See</u> <u>Landmark Land Co. v. Buchanan</u>, 874 F.2d 717, 723 (10th Cir. 1989) ("There are many intangible rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments.").  However, a procedural due process claim has not been asserted here by plaintiffs.*

protection violation").[6]  There is no dispute that the defendants' demolition of plaintiffs'

property constituted a final taking.  However, plaintiffs have not, as of yet, been denied just

compensation related to the taking or demonstrated that state procedures are inadequate to

compensate them for their loss.

The ongoing condemnation action in state court may ultimately result in adequate

compensation for the damages suffered by plaintiffs.[7]  Plaintiffs argue that the state court's

interlocutory ruling denying them leave to assert counterclaims and limiting a compensation

award to the present value of the land prevents them from fully realizing their damages for

the demolition of their property.  However, even if the potential compensation in state court

is not as encompassing as a damages award in a § 1983 case, this does not necessarily render

the state proceedings inadequate.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 535 (1984)

("[T]hat [a party] might not be able to recover  under [state] remedies the full amount which

he might receive in a § 1983 action is not . . . determinative of the adequacy of the state

remedies.").  Until such proceedings are complete, the court cannot properly determine the

adequacy or inadequacy of compensation or the amount of damages, if any, due to plaintiffs

---

[6]*The court recognizes that a Fourth Amendment seizure claim is typically regarded as a more particularized claim.  See, e.g., Soldol v. Cook County, 506 U.S. 56, 61 (1992) (noting that a seizure occurs when "there is some meaningful interference with an individual's possessory interests in that property").  However, under the circumstances of this case, which included an eviction pursuant to a standing judicial order, the court concludes that the same underlying practical considerations barring premature due process and equal protection claims apply equally to plaintiffs' Fourth Amendment claim.*

[7]*In their pleadings before the court, the City and the Urban Renewal Authority reference the earlier demolition of the plaintiffs' businesses and residences and seek to allow plaintiffs to share in any award of compensation for the property.  Def's. Ex. 2.*

for the destruction of their property.  Furthermore, if the issues related to the demolition of plaintiffs' property are truly separate from the issues pending in the condemnation action, plaintiffs do not appear to be foreclosed from pursuing an inverse condemnation action in state court to recover any damages suffered as a result of the City's initial attempts to condemn their property.  While plaintiffs argue they must concede the validity of the taking in order to pursue inverse condemnation, the court can discern no such requirement under state law.[8]

Given the interrelated nature of the arguments and claims raised in state court with those raised in this case, the court concludes plaintiffs cannot avoid the ripeness requirement applicable to claims under the Takings Clause.  As a result, defendants' motion to dismiss is **GRANTED** and plaintiffs' case is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**IT IS SO ORDERED**.

Dated this 29th day of August, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[8]*The pertinent statute states that in a case where a "corporation or municipality authorized to exercise the right of eminent domain shall have taken and occupied, for purposes for which it might have resorted to condemnation proceedings, . . ., any land, without having purchased or condemned the same, the damage thereby inflicted upon the owner of such land shall be determined in the manner provided in this article for condemnation proceedings."  66 Okla. Stat. § 57.*